UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| GERARD LANDRY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:12-cv-00016-JAW |
| | ) | |
| PATRICIA BARNHART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AFFIRMING THE RECOMMENDED DECISION OF
THE MAGISTRATE JUDGE**

Gerard Landry, an inmate at the Maine State Prison in Warren (Prison), filed a lawsuit against Patricia Barnhart, Joseph Ponte, and a John Doe defendant, in their individual capacities as prison officials for the Maine State Prison system. Mr. Landry claims the Defendants failed to protect him from a substantial risk of harm—an assault with a padlock—in the Prison. He has alleged a violation of the Eighth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 (§ 1983), the federal Civil Rights Act, and pursuant to 5 M.R.S. § 4682, the Maine Civil Rights Act (MCRA). The Defendants moved for summary judgment on all counts. On March 11, 2013, the Magistrate Judge recommended that the Court grant the motion in favor of the Defendants. After conducting a de novo review, the Court affirms the Magistrate Judge's recommendation, granting the Defendants' Motion for Summary Judgment.

**I.   BACKGROUND**

    **A.   Factual Overview**

The Court adopts the Magistrate Judge's recitation of the facts and includes a factual summary here to give immediate context.[1]  *See Recommended Decision* at 2-6 (ECF No. 50) (*Rec. Dec.*).  On September 6, 2011, Mr. Landry, an inmate at the Prison, was assaulted by a fellow inmate.  *Id.* at 2.  After the assault, when Mr. Landry regained consciousness, he witnessed the inmate who assaulted him stuff a padlock and a sock into his pocket.  *Id.*  Mr. Landry suffered a broken jaw and a number of contusions on his torso.  *Id.*

In two related padlock cases brought by inmates at the prison, Keith Ayotte alleges that he was assaulted with a padlock by an inmate on October 28, 2010 and David Lakin alleges he was assaulted with a padlock on September 10, 2010.[2] Including numbers from Mr. Ayotte's and Mr. Lakin's companion padlock cases, the Magistrate Judge concluded that from January 2004 until June 2012, there were 370 reported inmate-on-inmate assaults at the Maine State Prison of which 17 assaults involved padlocks.  *Id.* at 3-4.  With respect to total reported inmate-on-inmate assault incidents at the prison per year, there were at least 25 in 2007, 28 in 2008, 50 in 2009, 48 in 2010, 51 in 2011, and 86 in the first nine months of 2012. *Id.* at 4.  In 2009, an inmate died from one incident of inmate-on-inmate violence, which does not appear to have involved a padlock.  *Id.* at 5.  From September 2009

---

[1]   Mr. Landry did not object to the Magistrate Judge's recitation of the facts but rather objected to her application of the facts to the relevant law.  *See Pl.'s Obj. to Magistrate's Recommended Decision on Defs.' Mot. for Summ. J.* at 3-4, 10-11, 13 (ECF No. 51) ("Again, these facts were specifically accepted by the Magistrate in her consideration of Defendants' deliberate indifference, but she erroneously found them not to rise to the level of such indifference").

[2]   Throughout her decision, the Magistrate Judge referenced the two companion padlock assault cases, *Ayotte v. Barnhart*, 1:11-cv-00331-JAW, and *Lakin v. Barnhart*, 1:11-cv-00332-JAW. *Id.* at 3-4.

2

through September 2011, particularly in 2010, there had been an increase in the number of padlock assaults at the Prison. *Id.* at 4. Prison records indicate that there were no padlock assaults in 2007, two in 2008, two in 2009, six in 2010 (including the assaults on Mr. Ayotte and Mr. Lakin), one in 2011 (including the assault on Mr. Landry), and one in 2012. *Id.* at 4-5.

The Maine State Prison has a practice of issuing padlocks to all inmates except those in segregation as a means of securing their personal belongings. *Id.* at 5. Prison authorities are required under Maine law to provide inmates with some means to secure their belongings. *Id.* Patricia Barnhart, who was the Prison Warden, testified that inmates who assaulted other inmates did not have their padlocks confiscated because "they would still need to secure their property" and because "they're in prison where if they want to find a weapon, they will find a weapon." *Id.* at 6. The Prison has a number of policies designed to deter inmate-on-inmate violence, including classification procedures, specific housing placement, segregation, individual management plans, identification of high risk inmates, write-ups and other disciplinary measures; however, Mr. Landry questions their effectiveness. *Id.*

### B. Procedural History

Mr. Landry filed a complaint with the Court on January 13, 2012 alleging that Warden Barnhart, Joseph Ponte, the Commissioner of the Maine Department of Corrections, and a John Doe defendant, the Unit Manager at the Maine State Prison, violated his Eighth Amendment rights under § 1983 and the MCRA by

deliberately disregarding a known risk of padlock assaults in the prison. *Compl.* (ECF No. 1).

### 1. Motion for Summary Judgment

The Defendants' moved for summary judgment on November 2, 2012 asserting qualified immunity and arguing that they did not act with deliberate indifference to a known, serious risk of harm because padlock assaults at the prison were infrequent and the prison had reasonable policies in place to control inmate-on-inmate violence. *Defs.' Mot. for Summ. J.* at 8-11 *(*ECF No. 37) (*Defs.' Mot.*). On the same day, the Defendants filed a statement of facts in support of their motion. *Defs.' Statement of Material Facts* (ECF No. 38).

On November 23, 2012, Mr. Landry filed a response in opposition to the Defendants' motion. *Pl.'s Resp. to Defs.' Mot. for Summ. J.* (ECF No. 39) (*Pl.'s Opp'n*). In his response, Mr. Landry argued that the record raised genuine issues of material fact concerning whether the Defendants deliberately ignored the safety risk that padlocks presented to inmates and insisted that the Defendants are not eligible for qualified immunity because they violated clearly established law by refusing to address the increase in padlock assaults in 2010. *Id.* at 3-17. On the same day, Mr. Landry also filed a response to the Defendants' statement of facts and his own statement of material facts. *Pl.'s Opposing and Additional Statement of Material Facts* (ECF No. 40).

On December 5, 2012, the Defendants filed a reply to Mr. Landry's opposition, which included a numerical chart tracking the number of padlock

4

attacks from 2004 to 2012 to show that "over [a] seven year period the number of assaults with padlocks has continued to be only a small fraction of overall assaults." *Reply to Resp. to Defs.' Mot. for Summ. J.* at 3-4 (ECF No. 44) (*Defs.' Reply*). The Defendants argued that "merely negligent conduct on the part of the defendants cannot form the basis of § 1983 liability for failure to protect an inmate from an assault." *Id.* at 4. The Defendants also replied to Mr. Landry's statement of material facts and interposed additional statements of fact on December 5, 2012. *Reply to Additional Statement of Fact; and Defs.' Additional Statement of Material Facts* (ECF No. 45).

## 2. The Magistrate Judge's Recommended Decision

The Magistrate Judge recommended that the Court grant the Defendants' motion for summary judgment on one of two grounds: (1) the record fails to generate a genuine dispute of material fact regarding whether the prison's padlock policy created a substantial or pervasive risk of harm to inmates or (2) the Defendants are entitled to qualified immunity. *Rec. Dec.* at 12-15.

With respect to Count I—Mr. Landry's § 1983 claim for violation of his Eighth Amendment rights—the Magistrate Judge concluded that similar to *Beaton v. Tennis*, 460 F. App'x 111 (3d Cir. 2012), the record would not permit a reasonable juror to conclude that the Defendants consciously disregarded a substantial risk of serious harm to Mr. Landry. *Id.* at 9, 11-12. Specifically, she observed that when compared to other cases involving frequent inmate-on-inmate violence, "[h]ere, in contrast, the summary judgment record does not demonstrate a long-standing

history of frequent padlock assaults." *Id.* at 11. Instead, "with the exception of a period of several months during 2010, incidents of padlock assaults have been infrequent." *Id.* Further, "[e]ven though [Mr.] Landry's assault was the latest in time of the three cases currently pending in this court, even as to him the record does not establish a longstanding and pervasive risk." *Id.* at 12.

The Magistrate Judge also pointed out that "padlocks have a legitimate purpose [because] prison authorities are required by Maine statute to provide inmates with a 'reasonably secure area' for their personal belongings." *Id.* Although she recognized that prison policy did not relieve the Defendants of their Eighth Amendment obligations to Mr. Landry and other inmates, she also noted that because prison officials must balance inmates' competing needs, "federal courts may accord deference [to prison officials] where appropriate." *Id.*

Next, the Magistrate Judge concluded that even if the Court decides that the Defendants' conduct violated Mr. Landry's Eighth Amendment rights, the Defendants are entitled to qualified immunity because "although the number of padlock assaults in 2010 increased and is cause for serious concern, 'officers of reasonable competence' could nevertheless disagree on the lawfulness of continuing with the padlock policy." *Id.* at 15. Finally, the Magistrate Judge recommended the Court grant summary judgment on Count II, Mr. Landry's MCRA claim, because "'[t]he disposition of a 42 U.S.C. § 1983 claim also controls a claim under the MCRA.'" *Id.* (quoting *Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007)).

## II. THE PARTIES' POSITIONS

6

### A.     Mr. Landry's Objection

On March 29, 2013, Mr. Landry filed an objection to the Magistrate Judge's Recommended Decision.  *Pl.'s Obj. to Magistrate's Recommended Decision on Defs.' Mot. for Summ. J.* (ECF No. 51) (*Pl.'s Obj.*).  Mr. Landry's main objection is that the Magistrate Judge "incorrectly concluded [he] was required to establish that the risk of harm at issue was longstanding and pervasive," maintaining that "a [p]laintiff may survive summary judgment upon a showing that the risk of harm was well documented or expressly noted by Defendants."  *Id.* at 2-4, 6-7, 11.  Mr. Landry insists the facts show that the risk of padlock assaults was both well-documented and expressly noted by the Defendants and therefore the Magistrate Judge should not have recommended granting summary judgment.  *Id.* at 2-4.  More specifically, he claims that the Defendants were put on notice of increasing padlock violence in the prison because: (1) the plaintiffs in the companion cases filed complaints about padlock assaults prior to Mr. Landry's assault; (2) padlock assaults nearly doubled during the two and a half years leading up to Mr. Landry's assault; and (3) Defendant Barnhart addressed the inmates at the prison and threatened them with consequences if padlock assaults continued.  *Id.* at 3-4.

Further, Mr. Landry asserts that the Magistrate Judge incorrectly relied on *Beaton*.  *Id.* at 10.  He argues that, unlike in *Beaton*, here there is a genuine issue of material fact regarding whether there was a longstanding and pervasive risk of padlock assaults in the prison because (1) there was an increase in overall inmate-on-inmate violence in the prison, (2) there was an increase in padlock assaults two

7

and a half years before Mr. Landry's assault, and (3) Defendant Barnhart periodically received and reviewed reports on the number of assaults occurring at the prison. *Id.* at 10, 12-13, 15. Mr. Landry states, "[t]he evidence could not be clearer that the number of padlock assaults in the two years from September of 2009 to September of 2011 equaled the amount of assaults from the previous five years combined" and therefore "clearly dispute[s] Defendants' argument that the number of padlock assaults was insignificant." *Id.* at 12.

Next, Mr. Landry contends that the prison's policy on padlocks establishes that "the Defendants deliberately chose and continue to choose not to address the known risk [of harm] presented by the padlocks." *Id.* at 15. He argues that the Prison's policy disregards potential harm to inmates because the Prison does not consider a prisoner's background before issuing a padlock and inmates who have been involved in padlock assaults do not get their padlocks taken away. *Id.* Mr. Landry also insists that the Defendant's deliberate indifference may be inferred from the fact that the prison still has not changed its padlock policies and a Prison employee testified that only half of the inmates use padlocks because theft is not a problem. *Id.* at 16-17.

Finally, Mr. Landry objects to the Magistrate Judge's ruling on the Defendants' qualified immunity argument, arguing the Defendants were clearly aware that inmates have the right to be free from assaults with weapons in prison. *Id.* at 17-18.

    **B.    The Defendants' Response**

On April 2, 2013, the Defendants responded to Mr. Landry's objection to the Recommended Decision. *Defs.' Resp. to Objection to Report and Recommended Decision* (ECF No. 54) (*Defs.' Resp.*). First, the Defendants note that Mr. Landry "raises substantially the same points he argued in his Response to Defendant's Motion for Summary Judgment." *Id*. at 1. The Defendants also counter Mr. Landry's criticisms of its policy decisions by pointing out that "the policy decisions of prison officials are entitled to deference from a court unless there is substantial evidence in the record to demonstrate that the decisions are unreasonable or an exaggerated response to a specific problem." *Id*. at 2. Next, the Defendants argue that an increase from year to year in the number of padlock assaults is not statistically significant because padlock assaults have been and continue to constitute a small fraction of overall prison assaults. *Id*. at 2-3. Further, "[i]n an attempt to shore up his argument as to the prevalence of padlock assaults, [Mr. Landry] conflates the number of padlock assaults with the overall incidence of assaults in the prison." *Id*. at 3. Finally, the Defendants argue that Mr. Landry's approach to his Eighth Amendment claim "would render [them] strictly liable for any assault any time there is an increase in the number of assaults, no matter what reason," and that Mr. Landry's proposed standard is therefore inconsistent with the actual culpability standard applicable to prison officials. *Id*.

## III.   DISCUSSION

### A.   Standard of Review

The Magistrate Judge issued her Recommended Decision pursuant to 28 U.S.C. § 636(b)(1)(B). Upon timely objection to the Recommended Decision, this Court is required to make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see Gioiosa v. United States*, 684 F.2d 176, 178 (1st Cir. 1982). Further, in the context of a motion for summary judgment, the Court should grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "has the potential to change the outcome of the suit" and a dispute is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

"The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case." *Phair v. New Page Corp.*, 708 F. Supp. 2d 57, 61 (D. Me. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Id.* (citing *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004)). However, the Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence

which, in the aggregate, is less than significantly probative.'" *Tropigas*, 637 F.3d at 56 (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)).

### B. Count I: § 1983 Eighth Amendment Violation

Section 1983 allows people within the jurisdiction of the United States to bring civil lawsuits against any person who deprives them "of any rights, privileges, or immunities secured by the Constitution and laws" under color of law. 42 U.S.C. § 1983. Here, Mr. Landry asserts that the Defendants violated his constitutional Eighth Amendment rights against cruel and unusual punishment. *See* U.S. CONST. amend. VIII.

#### 1. Qualified Immunity

Public officials are entitled to "qualified immunity from personal liability arising out of actions taken in the exercise of discretionary functions." *Glik v. Cunniffe*, 655 F.3d 78, 81 (1st Cir. 2011). In determining questions of qualified immunity, courts must apply the following two prong analysis: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 9 (1st Cir. 2013) (quoting *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009)). These prongs may be resolved in any order, giving courts discretion to "determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 236-42 (2009); *accord Rivera-Sanchez*, 715 F.3d at 9.

The "clearly established" analysis itself divides into two parts. *Rivera-Sanchez*, 715 F.3d at 9. For a plaintiff to overcome qualified immunity, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotations and citations omitted). Next, considering the specific facts of the case at bar, it must have been "clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* (alteration in original). Under the discretion afforded by *Pearson v. Callahan*, the Court first addresses the first prong of the qualified immunity test—whether there was an underlying constitutional violation—with respect to Mr. Landry's Eighth Amendment claim.

### 2. Eighth Amendment Claim

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Giroux v. Somerset County*, 178 F.3d 28, 31 (1st Cir. 1999) (quoting *Farmer*, 511 U.S. at 832 (1994)). This scrutiny includes a duty on prison officials to provide "humane conditions of confinement," which encompasses "a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 832-33 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).

In *Farmer*, the Supreme Court set out the standard to apply in Eighth Amendment prisoner injury cases. The Court noted that not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety," and then held that only "a

prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828. A prisoner must meet two requirements to establish liability under this standard. *Id.*; *accord Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 64 (1st Cir. 2002) ("[p]rison officials violate the constitutional conditions of confinement only when two requirements are met"). First, the inmate must show, by an objective standard, "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, he or she must demonstrate that the prison official had a "'sufficiently culpable state of mind'" for liability—a subjective standard—which in prison-condition cases is described as "deliberate indifference" to an inmate's health or safety. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

Therefore, for Mr. Landry to survive summary judgment on his § 1983 Eighth Amendment claim, there must be sufficient evidence to raise a genuine dispute of material fact regarding (1) whether he was subjected to conditions posing a substantial risk of serious harm and (2) whether the Defendants acted with deliberate indifference such that they consciously disregarded a substantial risk of serious harm to inmates at the Warren Prison. *See id.* at 834, 837; *Beaton*, 460 F. App'x at 114; *Marrero v. Rose*, No. 1:10-cv-00509-LJO-GSA-PC, 2013 WL 2991295, at *5 (E.D. Cal. June 14, 2013); *Price v. Armstrong*, No. 3:03CV1156(DJS), 2006 WL 980581, at *6 (D. Conn. Apr. 11, 2006).

Even viewing the record in the light most favorable to Mr. Landry, the Court agrees with the Magistrate Judge that Mr. Landry has not generated a genuine

13

dispute of material fact concerning the objective prong of his § 1983 Eighth Amendment claim—that providing inmates with padlocks subjected Mr. Landry to conditions posing a substantial risk of serious harm.

### a. Substantial Risk of Serious Harm

In prisoner injury cases, the deprivation alleged by an inmate must be "sufficiently serious," which means that the "prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations and citations omitted). Under this standard, "for a claim based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *accord Burrell v. Hampshire County*, 307 F.3d 1, 8 (1st Cir. 2002). The Supreme Court in *Farmer* also described this standard as an "objectively intolerable risk of harm." *Id.* at 846. Mr. Landry contests the Magistrate Judge's interpretation of the "substantial risk of serious harm" standard. *Pl.'s Obj.* at 2-12.

The Magistrate Judge focused her Eighth Amendment analysis on whether or not there was a "longstanding and pervasive risk of harm." *Rec. Dec.* at 9-13. The "pervasive" language follows the majority of federal courts that have based a decision on the "substantial risk of serious harm" prong, and in particular adopts the Third Circuit's reasoning in *Beaton*. *See* 460 F. App'x at 114 ("[Plaintiff] has not raised a genuine issue of fact that the prison's padlock policy creates a substantial or pervasive risk of harm to its inmates"); *see also Shrader v. White*, 761 F.2d 925, 978 (4th Cir. 1985) ("a pervasive risk of harm may not ordinarily be shown by

14

pointing to . . . isolated incidents, but it may be established by much less than proof of a reign of violence and terror"). "Pervasive" derives from the verb "pervade" which means "to become diffused throughout every part of" something. WEBSTER'S COLLEGIATE DICTIONARY 925 (11th ed. 2003). In *Beaton*, the Third Circuit affirmed the conclusion that the evidence regarding padlock assaults—occurring approximately one to two times per year in the prison at issue—was not sufficiently "pervasive" to establish a cognizable claim on summary judgment.[3] 460 F. App'x at 114 (3d Cir. 2012).

Similarly, the district court in *Price v. Armstrong* explained that "[t]he possibility of harm is not equivalent to the substantial risk of harm." 2006 WL 980581, at *6. Accordingly, the court granted summary judgment, reasoning that "although there is evidence to suggest that inmates have used locks to harm other inmates, such as Price, who sustained a gruesome injury, there is no evidence to suggest that this type of assault was pervasive or even common." *Id.* (citing *Shrader*, 761 F.2d at 978). In contrast to *Beaton* and *Price*, the district court in *Marrero v. Rose* concluded that the plaintiff-prisoner's allegations of padlock attacks were sufficiently pervasive to satisfy the "substantial risk of harm" standard, because plaintiff and "*thousands* of other prisoners [had] been assaulted by other prisoners with prison-sold combination locks." *Marrero*, 2013 WL 2991295, at *5 (emphasis added).

---

[3] The magistrate judge in that case noted that inmate assaults using bars of soap occurred much more commonly than similar assaults utilizing padlocks. *Beaton v. Tennis*, 4:07-CV-1526, 2010 WL 2696857, at *6 (M.D. Pa. May 10, 2010), *report and recommendation adopted*, 4:07-CV-01526, 2010 WL 2696853 (M.D. Pa. July 7, 2010), *aff'd*, 460 F. App'x 111 (3d Cir. 2012).

In this case, the total number of padlock assaults at the Prison has remained relatively infrequent, and does not permit an inference that the padlocks posed "a substantial risk of serious harm." In Eighth Amendment cases involving padlock assaults, courts look directly at the number of padlock assaults in the prison to decide whether the risk of harm is substantial. *See Beaton*, 460 F. App'x at 114; *Marrero*, 2013 WL 2991295, at *5; *Price*, 2006 WL 980581, at *6. As in *Beaton*, the record here shows that between 2007 and 2012, there were generally between one and two padlock assaults per year, the sole exception being 2010. *See Rec. Dec.* at 4-5. There were no padlock assaults in 2007, two in 2008, two in 2009, and although there were six in 2010, the number fell back to one in 2011 and 2012. *Id.*

The increase in padlock assaults in 2010 is a concern, but a one-year spike does not allow an inference that "a substantial risk of serious harm exists," especially when the data suggest that the 2010 spike may have been an anomaly, not an upward trend. The assault on Mr. Landry was the one documented padlock assault in 2011, and there was again one padlock assault in 2012. *Id.* at 4-5. Here, when the specific incidents of harm at issue—padlock assaults—are compared to the "thousands of prisoners [who] have been assaulted by other prisoners with combination locks" in *Marrero*, 2013 WL 2991295, at *5, the level of padlock assaults at the Warren Prison does not approach the magnitude in *Marrero*. *See Rec. Dec.* at 4-5. Even viewing the facts in the light most favorable to Mr. Landry, the facts here are distinct from *Marrero*, where summary judgment was in part denied, and similar to *Beaton* and *Price*, where it was granted.

16

Finally, even if the Magistrate Judge correctly analyzed the pervasiveness of padlock assaults, Mr. Landry strenuously insists that the Magistrate Judge failed to address two other *Farmer* factors: whether the risk of padlock assaults was well-documented or expressly noted by prison officials. *Pl.'s Obj.* at 2-17. Mr. Landry's argument, however, is misplaced because he addresses the wrong part of the *Farmer* test; "well documented, or expressly noted" goes to the subjective prong—deliberate indifference.[4] *See Farmer*, 511 U.S. at 842-83. There, the Court was addressing a hypothetical situation in which the objective prong—"substantial risk of serious harm"—had already been satisfied; "well-documented, or expressly noted" refer to factors that could allow a court to conclude that the defendants were deliberately indifferent to such a "substantial risk." *Id.* Legal arguments addressing deliberate indifference—the subjective prong—do not bear on whether the padlock policy posed a substantial risk of serious harm.[5]

The Court acknowledges that one padlock assault by an inmate against another inmate is one too many, particularly for the inmate assaulted.

---

[4] The relevant passage in *Farmer* is:
  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways [ ]. For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known about it, then such evidence could be sufficient to permit a trier of fact to find *that the defendant-official had actual knowledge of the risk*.
*Farmer*, 511 U.S. at 842-43 (emphasis added) (internal quotations omitted).

[5] The Court acknowledges that the language in footnote 5 overlaps with the "pervasive" language that is used in addressing the "substantial risk of serious harm" prong. While post-*Farmer* cases may have borrowed language from *Farmer* that addresses the deliberate indifference prong in crafting the substantial risk standard, this does not mean all of the language in footnote 5 can be used for this purpose. "Well-documented" and "expressly noted" in particular are terms that, by their plain meaning, do not relate to the magnitude of the risk: an extremely small risk can be well-documented and expressly noted.

17

Nevertheless, as the First Circuit has written, "not every injury suffered by a prisoner at the hands of a fellow inmate gives rise to an Eighth Amendment claim." *Giroux*, 178 F.3d at 32.  Based on a de novo assessment of the record and the relevant caselaw, the Court agrees with the Magistrate Judge that there is no genuine dispute of material fact on Mr. Landry's Eighth Amendment claim because there was no substantial risk of padlock attacks in the Prison.  Accordingly, the Defendants are entitled to qualified immunity based upon Mr. Landry's failure to articulate an Eighth Amendment violation.  *See Rivera-Sanchez*, 715 F.3d at 8-9.

    **C.**    **Count II:  Maine Civil Rights Act Claim**

As the Magistrate Judge pointed out, "[t]he disposition of a 42 U.S.C. § 1983 claim also controls a claim under the MCRA."  *Berube*, 506 F.3d at 85 (citing *Dimmitt v. Ockenfels*, 220 F.R.D. 116, 123 (D. Me. 2004)).  On that basis, because Mr. Landry failed to generate a genuine dispute of material fact for the jury on his § 1983 Eighth Amendment claim, the Court also grants summary judgment on his related MCRA claim.  *Id.* at 86.

**IV.**    **CONCLUSION**

    1. It is therefore further ORDERED that the Recommended Decision of the Magistrate Judge (ECF No. 50) be and hereby is AFFIRMED.

    2. It is further ORDERED that the Defendants' Motion for Summary Judgment (ECF No. 37) be and hereby is GRANTED.

SO ORDERED.

                                            /s/ John A. Woodcock, Jr.
                                            JOHN A. WOODCOCK, JR.
                                            UNITED STATES DISTRICT JUDGE

Dated this 25th day of September, 2013